1  **WO**

2

3

4

5

6                 **IN THE UNITED STATES DISTRICT COURT**

7                    **FOR THE DISTRICT OF ARIZONA**

8
   Thomas M. James,                    )
9                                       )    No. CV 07-160-TUC-AWT
                  Petitioner,           )
10                                      )    **ORDER**
    vs.                                 )
11                                      )
    Charles Ryan, et al.,               )
12                                      )
                  Respondents.          )
13                                      )
   ─────────────────────────────────   )
14

15          Petitioner Thomas M. James, presently incarcerated at the Arizona State Prison -

16  Mohave Unit, in Douglas, Arizona, has filed a Petition for Writ of Habeas Corpus pursuant

17  to 28 U.S.C. § 2254. Before the Court are the Amended Petition and Affidavit in Support

    (Docs. 26, 27), Respondents' Answer (Doc. 34), and Petitioner's Reply (Doc. 45). After
18
    review of the pleadings and record, and for the following reasons, the Petition is DENIED.
19
    **I.      Factual and Procedural Background**
20
            In 2000, Petitioner was indicted for the first degree murder of John Hoskin. (Doc. 34,
21
    Ex. A at 4.) He was convicted in the Pima County Superior Court of second degree murder,
22
    of a dangerous nature involving a deadly weapon. (*Id.* at 15.) The court sentenced him to an
23
    aggravated sentence of 19 years. (*Id.* at 32.)
24
            Petitioner filed an appeal before the Arizona Court of Appeals, and the court affirmed
25
    his conviction and sentence. (Doc. 34, Exs. B, C.) On May 14, 2004, Petitioner filed a notice
26
    of post-conviction relief ("PCR") pursuant to Arizona Rule of Criminal Procedure 32 (*id.*,
27
    Ex. D); he filed his PCR petition on September 29, 2004 (*id.*, Ex. E). The PCR court held an
28
    evidentiary hearing on January 9, 2006, on one of Petitioner's claims of ineffective assistance

of counsel ("IAC"). (Doc. 57 at 10-92.) On June 5, 2006, the PCR court denied relief. (Doc. 34, Ex. I.) The Arizona Court of Appeals granted Petitioner's request for review but denied relief. (Doc. 57 at 104-23; Doc. 34, Ex. J.)

## II. Discussion[1]

Petitioner alleges in Claim One that: (a) trial counsel was ineffective because he presented an implausible defense that impeded James's right to testify; (b) the trial court should have held a hearing regarding evidence suppressed by the prosecution; (c) the prosecution suppressed evidence in violation of *Brady v. Maryland*; and (d) the prosecution presented perjured testimony by witness Detective Paul Montano. In Claim Two, Petitioner alleges: (a) trial counsel was ineffective for failing to object to admission of his coerced confession; and (b) the trial court violated his right to due process in admitting the confession. In Claim Three, Petitioner alleges appellate counsel was ineffective for failing to raise a claim: (a) challenging the admission of Detective Montano's interrogation of Petitioner, which was hearsay, violated the Confrontation Clause and amounted to improper vouching for another witness; (b) challenging the trial court's refusal to accept a manslaughter verdict; (c) alleging trial court error for not instructing on reckless manslaughter;[2] and (d) alleging an *Apprendi-Blakely* violation. Additionally, Petitioner argues the trial court violated his rights under the Confrontation Clause by admitting Detective Montano's testimony, Claim 3(e). Claim Four alleges Petitioner's sentencing was defective because the court failed to make *Faretta* findings regarding his self-representation.

---

[1] Petitioner's claim numbering is not clear and fails to break out subparts of certain claims. Respondents failed to fully clear-up the confusion in their Response. The Court has followed Petitioner's numbering as possible, but has added or changed the numbering as necessary for clarity.

[2] To the extent Petitioner is attempting to raise an independent claim that the trial court erred in failing to instruct on reckless manslaughter, Petitioner presents this solely as a state-law claim, which is not cognizable before this Court.

Finally, Petitioner alleges in Claim Five that the cumulative errors arising from all these claims warrants relief.

## A. Exhaustion and Procedural Default

Respondents argue that Petitioner failed to properly exhaust Claims 1(b), 1(c), 1(d), 2(b), and 3(c). The Court also evaluates the procedural status of Claim 3(e).

### 1. Principles of Exhaustion and Procedural Default

A writ of habeas corpus may not be granted unless it appears that a petitioner has exhausted all available state court remedies. 28 U.S.C. § 2254(b)(1); *see also Coleman v. Thompson*, 501 U.S. 722, 731 (1991). To exhaust state remedies, a petitioner must "fairly present" the operative facts and the federal legal theory of his claims to the state's highest court in a procedurally appropriate manner. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999); *Anderson v. Harless*, 459 U.S. 4, 6 (1982); *Picard v. Connor*, 404 U.S. 270, 277-78 (1971). If a habeas claim includes new factual allegations not presented to the state court, it may be considered unexhausted if the new facts "fundamentally alter" the legal claim presented and considered in state court. *Vasquez v. Hillery*, 474 U.S. 254, 260 (1986).

Exhaustion requires that a petitioner clearly alert the state court that he is alleging a specific federal constitutional violation. *See Casey v. Moore*, 386 F.3d 896, 913 (9th Cir. 2004); *see also Gray v. Netherland*, 518 U.S. 152, 163 (1996) (general appeal to due process not sufficient to present substance of federal claim); *Lyons v. Crawford*, 232 F.3d 666, 669-70 (2000), *as amended by* 247 F.3d 904 (9th Cir. 2001) (general reference to insufficiency of evidence, right to be tried by impartial jury, and ineffective assistance of counsel lacked specificity and explicitness required); *Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999) ("The mere similarity between a claim of state and federal error is insufficient to establish exhaustion."). A petitioner must make the federal basis of a claim explicit either by citing specific provisions of federal law or case law, *Lyons*, 232 F.3d at 670, or by citing state cases that plainly analyze the federal constitutional claim, *Peterson v. Lampert*, 319 F.3d 1153, 1158 (9th Cir. 2003) (en banc); *cf. Fields v. Washington*, 401 F.3d 1018, 1022 (9th Cir. 2005) (mere citation to a state case that conducts both a state and federal law analysis does not, by

1   itself, satisfy exhaustion).

2       In Arizona, there are two primary procedurally appropriate avenues for petitioners to
3   exhaust federal constitutional claims: direct appeal and PCR proceedings.  Rule 32 of the
4   Arizona Rules of Criminal Procedure governs PCR proceedings and provides that a petitioner
5   is precluded from relief on any claim that could have been raised on appeal or in a prior PCR
6   petition.  Ariz. R. Crim. P. 32.2(a)(3).  The preclusive effect of Rule 32.2(a) may be avoided
7   only if a claim falls within certain exceptions (subsections (d) through (h) of Rule 32.1) and
8   the petitioner can justify why the claim was omitted from a prior petition or not presented in
9   a timely manner.  *See* Ariz. R. Crim. P. 32.1(d)-(h), 32.2(b), 32.4(a).

10      A habeas petitioner's claims may be precluded from federal review in two ways.
11  First, a claim may be procedurally defaulted in federal court if it was actually raised in state
12  court but found by that court to be defaulted on state procedural grounds.  *Coleman*, 501 U.S.
13  at 729-30.  Second, a claim may be procedurally defaulted if the petitioner failed to present
14  it in state court and "the court to which the petitioner would be required to present his claims
15  in order to meet the exhaustion requirement would now find the claims procedurally barred."
16  *Coleman*, 501 U.S. at 735 n.1; *see also Ortiz v. Stewart*, 149 F.3d 923, 931 (9th Cir. 1998)
17  (stating that the district court must consider whether the claim could be pursued by any
18  presently available state remedy).  If no remedies are currently available pursuant to Rule 32,
19  the claim is "technically" exhausted but procedurally defaulted.  *Coleman*, 501 U.S. at 732,
20  735 n.1; *see also Gray*, 518 U.S. at 161-62.

21      Because the doctrine of procedural default is based on comity, not jurisdiction, federal
22  courts retain the power to consider the merits of procedurally defaulted claims.  *Reed v. Ross*,
23  468 U.S. 1, 9 (1984).  However, the Court will not review the merits of a procedurally
24  defaulted claim unless a petitioner demonstrates legitimate cause for the failure to properly
25  exhaust the claim in state court and prejudice from the alleged constitutional violation, or
26  shows that a fundamental miscarriage of justice would result if the claim were not heard on
27  the merits in federal court.  *Coleman*, 501 U.S. at 750.

28

### 2. Procedural Default Analysis

#### a. Claims 1(b), 1(c)

These two claims are premised on *Brady v. Maryland*, although the exact claims are not entirely clear. The Court summarizes them as alleging that (b) the trial court should have held a hearing regarding evidence suppressed by the prosecution; and (c) the prosecution suppressed evidence. Regardless of the exact characterization of the claims, Petitioner did not raise any *Brady* claims in state court. (*See* Doc. 34, Exs. B, E, F.)

Petitioner argues that he "raised those concerns stemming from a Brady request in the Superior Court prior to filing supplement PCR," raised it in a footnote of his PCR petition (Doc. 45 at 13), and in numerous places in special actions, on appeal and in the PCR proceeding (*Id.* at 15). The footnote merely mentions a related factual allegation in the context of a different claim, it does not mention *Brady* or any federal claim. (Doc. 34, Ex. E at 3 n.3.) Further, review of the materials cited by Petitioner indicates that he repeatedly sought disclosure, what he refers to as *Brady* material, to support an IAC claim. He does not allege and the record demonstrates that he did not properly raise a claim in his PCR petition or supplement based on *Brady*.

If Petitioner were to return to state court now to litigate these claims, they would be found waived and untimely under Rules 32.2(a)(3) and 32.4(a) of the Arizona Rules of Criminal Procedure because they do not fall within an exception to preclusion. Ariz. R. Crim. P. 32.2(b); 32.1(d)-(h). Therefore, these claims are technically exhausted but procedurally defaulted. Petitioner has not alleged cause and prejudice or that a fundamental miscarriage of justice will result if these issues are not reviewed on the merits. Claims 1(b) and 1(c) are procedurally defaulted.

#### b. Claim 1(d)

Petitioner alleges that his due process rights were violated by the admission of perjured testimony by witness Detective Paul Montano. Petitioner presented this claim in his PCR petition but then withdrew it. (Doc. 34, Ex. E at 14-16, Ex. G at 2.) Promptly thereafter, he filed a Notice of Errata, alerting the PCR court that he did not intend to withdraw the

claim. (Doc. 47-4 at 124.) The PCR court did not acknowledge the errata and did not address the claim on the merits.

However, Petitioner did not fairly present this claim in his petition for review to the appellate court. (Doc. 57 at 104-23.) For a petitioner to exhaust a claim in state court, the petitioner must bring the same federal claim before both the trial (PCR) court and the court of appeals. *See O'Sullivan*, 526 U.S. at 848. Here, Petitioner did not raise the issue at all in his petition for review. Thus, Petitioner did not fairly and properly present the same claim in the state courts and has not properly exhausted Claim 1(d). *See id.* at 845.

If Petitioner were to return to state court now to litigate this claim, it would be found waived and untimely under Rules 32.2(a)(3) and 32.4(a) of the Arizona Rules of Criminal Procedure because it does not fall within an exception to preclusion. Ariz. R. Crim. P. 32.2(b); 32.1(d)-(h). Therefore, this claim is technically exhausted but procedurally defaulted. Petitioner has not alleged cause and prejudice or that a fundamental miscarriage of justice will result if this claim is not reviewed on the merits. Claim 1(d) is procedurally defaulted.

### c.    Claims 2(b) and 3(e)

In Claim 2(b), Petitioner alleges the court violated his right to due process by admitting his confession. In Claim 3(e), Petitioner alleges the trial court violated his rights under the Confrontation Clause by admitting Detective Montano's testimony.[3] The PCR

---

[3] Respondents did not acknowledge Claim 3(e) and did not, therefore, argue that the claim is defaulted. However, in his Amended Petition, Petitioner acknowledged that the PCR court found the claim precluded and he argued cause and prejudice to overcome the default; therefore, the Court finds it proper to address procedural default. *See Vang v. Nevada*, 329 F.3d 1069, 1073 (9th Cir. 2003) (finding district court can raise procedural default sua sponte under appropriate circumstances); *cf. Day v. McDonough*, 547 U.S. 198, 209 (2006) (holding that district courts may sua sponte consider the timeliness of a habeas petition, just as circuit courts have held can be done for other affirmative defenses such as procedural default).

court found both of these claims precluded for failure to raise them on appeal.[4] (Doc. 34, Ex. I at 5-6.) Therefore, these claims are procedurally defaulted.

Petitioner argues the default of Claim 3(e) is overcome by IAC on appeal. He does not make such an argument regarding Claim 2(b). Even if he did, this cannot operate as cause to excuse the defaults of either claim because IAC for failure to raise these claims on appeal was not exhausted as an independent claim in Petitioner's PCR proceeding. Such claims also are technically exhausted but procedurally defaulted. *See Murray v. Carrier*, 477 U.S. 478, 489 (1986); *Gray*, 518 U.S. at 161-62; *Coleman*, 501 U.S. at 735 n.1; *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000) (ineffective counsel as cause can itself be procedurally defaulted).

### d.    Claim 3(c)

Petitioner alleges appellate counsel was ineffective for not raising a claim of trial court error in failing to instruct on reckless manslaughter. Petitioner is accurate that he raised this claim in a supplemental motion for rehearing before the PCR court and in his Petition for Review. However, under Arizona's rules, fair presentation requires including the ground in the PCR petition, Ariz. R. Crim. P. 32.5, which he did not do (Doc. 34, Ex. E); mentioning it for the first time in a motion for rehearing is not fair presentation, Ariz. R. Crim. P. 32.9 (motions for rehearing are solely to raise error in the court's ruling).

If Petitioner were to return to state court now to litigate this claim, it would be found waived and untimely under Rules 32.2(a)(3) and 32.4(a) of the Arizona Rules of Criminal Procedure because it does not fall within an exception to preclusion. Ariz. R. Crim. P. 32.2(b); 32.1(d)-(h). Therefore, this claim is technically exhausted but procedurally

---

[4]    The PCR court cited Arizona Rule of Criminal Procedure 32.2(a)(1), which states that a claim is precluded if it is "[r]aisable on direct appeal." The comment to the rule clarifies that this provision applies to grounds that may still be raised before an appellate court on direct appeal. The PCR court, however, was clear in its discussion of both these claims that Petitioner had completed his appeal without raising these claims. (Doc. 34, Ex. I at 5, 6.) Therefore, it is unambiguous that the judge precluded the claims because they were waived on appeal, which falls within a separate preclusion subpart, Rule 32.2(a)(3). Because the PCR court's intent is clear, and Petitioner does not challenge the erroneous citation, the Court relies upon the preclusion.

defaulted. Petitioner has not alleged cause and prejudice or that a fundamental miscarriage of justice will result if this claim is not reviewed on the merits. Claim 3(c) is procedurally defaulted.

**B.  Merits**

The Court reviews the merits of Claims 1(a), 2(a), 3(a), 3(b), 3(d), 4 and 5.

**1.  Legal Standard for Relief Under the AEDPA**

The Antiterrorism and Effective Death Penalty Act (AEDPA) established a "substantially higher threshold for habeas relief" with the "acknowledged purpose of 'reducing delays in the execution of state and federal criminal sentences.'" *Schriro v. Landrigan*, 550 U.S. 465, 473-74 (2007) (quoting *Woodford v. Garceau*, 538 U.S. 202, 206 (2003)). The AEDPA's "'highly deferential standard for evaluating state-court rulings' . . . demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997)).

Under the AEDPA, a petitioner is not entitled to habeas relief on any claim "adjudicated on the merits" by the state court unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The relevant state court decision is the last reasoned state decision regarding a claim. *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991)); *Insyxiengmay v. Morgan*, 403 F.3d 657, 664 (9th Cir. 2005).

"The threshold question under AEDPA is whether [the petitioner] seeks to apply a rule of law that was clearly established at the time his state-court conviction became final." *Williams v. Taylor*, 529 U.S. 362, 390 (2000). Therefore, to assess a claim under subsection (d)(1), the Court must first identify the "clearly established Federal law," if any, that governs

the sufficiency of the claims on habeas review. "Clearly established" federal law consists of the holdings of the Supreme Court at the time the petitioner's state court conviction became final. *Williams*, 529 U.S. at 365; *see Carey v. Musladin*, 549 U.S. 70, 74 (2006).

The Supreme Court has provided guidance in applying each prong of § 2254(d)(1). The Court has explained that a state court decision is "contrary to" the Supreme Court's clearly established precedents if the decision applies a rule that contradicts the governing law set forth in those precedents, thereby reaching a conclusion opposite to that reached by the Supreme Court on a matter of law, or if it confronts a set of facts that is materially indistinguishable from a decision of the Supreme Court but reaches a different result. *Williams*, 529 U.S. at 405-06; *see Early v. Packer,* 537 U.S. 3, 8 (2002) (per curiam). In characterizing the claims subject to analysis under the "contrary to" prong, the Court has observed that "a run-of-the-mill state-court decision applying the correct legal rule to the facts of the prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause." *Williams*, 529 U.S. at 406; *see Lambert v. Blodgett*, 393 F.3d 943, 974 (9th Cir. 2004).

Under the "unreasonable application" prong of § 2254(d)(1), a federal habeas court may grant relief where a state court "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular . . . case" or "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407. For a federal court to find a state court's application of Supreme Court precedent "unreasonable," the petitioner must show that the state court's decision was not merely incorrect or erroneous, but "objectively unreasonable." *Id.* at 409; *Landrigan*, 550 U.S. at 473; *Visciotti*, 537 U.S. at 25.

Under the standard set forth in § 2254(d)(2), habeas relief is available only if the state court decision was based upon an unreasonable determination of the facts. *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (*Miller-El II*). A state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in

light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. 322, 340 (2003) (*Miller-El I*); *see Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004). In considering a challenge under § 2254(d)(2), state court factual determinations are presumed to be correct, and a petitioner bears the "burden of rebutting this presumption by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Landrigan*, 550 U.S. at 473-74; *Miller-El II*, 545 U.S. at 240.

### 2. Merits Analysis

#### a. Standard for Ineffective Assistance of Counsel

Claims 1(a), 2(a), 3(a), 3(b) and 3(d) allege ineffective assistance of counsel. IAC claims are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail under *Strickland*, a petitioner must show that counsel's representation fell below an objective standard of reasonableness and that the deficiency prejudiced the defense. 466 U.S. at 687-88.

The inquiry under *Strickland* is highly deferential, and "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. Thus, to satisfy *Strickland*'s first prong, deficient performance, a defendant must overcome "the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.*

Because an IAC claim must satisfy both prongs of *Strickland*, the reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Id.* at 697 ("if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed"). A petitioner must affirmatively prove prejudice. *Id.* at 693. To demonstrate prejudice, he "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. The calculus involved in assessing prejudice "should proceed on the assumption

that the decision-maker is reasonably, conscientiously, and impartially applying the standards that govern the decision." *Id.* at 695.

### b. Claim 1(a)

Claim 1(a) was raised in this Court, and before the PCR court, as two intertwined issues: trial counsel failed to raise a plausible defense, which impeded Petitioner's right to testify. Petitioner argues that he wanted counsel to present self-defense but counsel chose to argue that Petitioner's wife killed the victim, which he believes was not supported by the evidence. Further, Petitioner contends that he could not testify because the defense counsel chose was in contradiction to his statements to the police and would have required him to lie.

The PCR court held an evidentiary hearing on this claim and made the following fact findings and ruling:

> Petitioner testified at the evidentiary hearing on January 9, 2006, that he wanted to make a self-defense claim, that he wanted to testify and that he had fired other attorneys who did not agree to this. According to Petitioner, counsel Dan Cooper did not believe Petitioner's self-defense theory. Petitioner conceded his statements were "messed up" and "stupid" because he was drunk. Petitioner said that he "bugged" Mr. Cooper throughout the trial about testifying and was ignored. In fact, Petitioner said that all of his attorneys told him he could not testify.
>
> According to Petitioner, Mr. Cooper told him that he, not Petitioner, would decide on the defense. Petitioner claimed that, at the time of the hearing, Mr. Cooper lied to Petitioner and told him that he would present the self-defense theory, thus averting "firing" by Petitioner.
>
> Petitioner agreed that the problems with his statements were that: first, he said that a masked intruder, either "Tattoo Bob" or "Biker Bob," was the murderer; second, he said a guy named Adam might have done it; third, he said that Sonny possibly had stabbed the victim; and, finally, Petitioner said that he had stabbed the victim but in self defense.
>
> Petitioner's trial counsel, Dan Cooper, testified at the same hearing that he selected the defense theory that Petitioner's wife killed the victim and he hired a blood expert to bolster that theory. Counsel rejected a self-defense theory because of the physical evidence, particularly the blood spatter evidence, and problems with Petitioner's credibility due to his various statements.
>
> The physical evidence revealed that the victim had been stabbed in the back and the victim's throat had been cut. The lack of defensive wounds on Petitioner suggested there had been no struggle and the evidence suggested an ambush instead. The court has reviewed the color copies of photographs submitted by Petitioner purporting to illustrate defensive wounds. Four photos show some redness on the scalp but no laceration or swelling; one shows a

bruise but no laceration or swelling on the left knee. None of the photos support Petitioner's claim that he was involved in a struggle.

In addition, because Petitioner had given so many different statements, trial counsel believed Petitioner would have little or no credibility. Trial counsel said that when Petitioner gave his statements to the police, he was a "cold stone liar," was belligerent and appeared to be a "real jerk." Trial counsel also believed, from his own experiences with Petitioner, that he lacked the ability to control his temper and would be an "absolute horrible witness." Trial counsel said a self-defense theory was a "really, really poor defense" in view of the physical evidence. In electing to pursue the defense that Petitioner's wife killed the victim, trial counsel chose what he thought was the better of two bad defenses.

All of counsel's conclusions were reasonable under prevailing standards and the court does not reach the issue of prejudice. Further, if the evidence did not support a credible self-defense theory, it was not unreasonable for counsel to refuse to advance a self-defense theory, even if it ultimately precluded counsel from arguing for a lesser-included offense.

With respect to Petitioner's right to testify, trial counsel was unequivocal. Had Petitioner insisted on testifying, Mr. Cooper would not have stood in his way. Instead, he would have made a record that Petitioner's testimony was over his objection and Petitioner would have testified. The court has considered the credibility of both witnesses and finds that Mr. Cooper did not prevent Petitioner from testifying.

Trial counsel has been a criminal defense attorney for most of his twenty-nine years of practice. He has represented approximately 120 persons charged with murder. In this case, he hired an investigator, an expert, and a child psychologist and personally interviewed all of the State's witnesses. He investigated the victim's background, learned that the victim had little, if any record and was a docile person. The Court finds that trial counsel's representation was reasonable under all the facts and circumstances of this case. Petitioner has failed to show ineffective assistance of trial counsel.

(Doc. 34, Ex. I at 3-5.)

Petitioner disputes several of the PCR court's fact findings. First, he notes that the PCR court interpreted his lack of defensive wounds as an indication that he was not attacked by the victim. Petitioner claims to have been hit from behind, therefore, he argues that typical defensive wounds would not be found. The Court's finding regarding the lack of struggle was based on both the lack of typical defense wounds **and** review of the alleged atypical injuries asserted by Petitioner, i.e., his knee and scalp injuries. The Court found neither sufficient. Petitioner has not demonstrated this finding to be incorrect by clear and convincing evidence. Second, Petitioner argues the PCR court found his scalp wound irrelevant. That is not an accurate reflection of the court's findings. The PCR court stated that

the photos indicate only some redness of the scalp and a bruise on the knee. (Doc. 34, Ex. I at 4.) The court did not find a scalp wound irrelevant, merely that any injury was nominal and did not evidence a struggle. (*Id.*)

Third, Petitioner contends the PCR court's credibility finding regarding counsel was flawed because counsel Dan Cooper testified that Petitioner did not agree to the defense presented, but in response to a state bar complaint Cooper stated that Petitioner did agree. Cooper testified that, although they disputed the best defense up to trial and Petitioner was not happy with his choice of defense, Petitioner understood that Cooper thought it was their only chance. (Doc. 57, RT 1/6/06 at 72.) Petitioner has not identified an inconsistency. Nor has he undermined the overall credibility finding by clear and convincing evidence.

Now the Court must review the objective reasonableness of the state courts' ruling that counsel's decision fell within reasonable professional judgment under *Strickland*. *See Wood v. Allen*, 130 S.Ct. 841, 849 at 850-51 & n.3 (2010); *Matylinsky v. Budge*, 577 F.3d 1083, 1091-92 (9th Cir. 2009) (counsel's choice of defense is one of strategy entitled to deference unless below professional norms). Petitioner contends counsel's decision to reject a self-defense theory was unreasonable because self-defense was the only plausible theory. Counsel's testimony, which the PCR court found credible, demonstrated that self-defense was not the only plausible theory. To the contrary, counsel was convinced that the physical evidence undermined self-defense and he hired a blood spatter expert to support his theory. The victim was stabbed in the back and his throat was cut. Additionally, Petitioner did not have wounds evidencing a struggle nor did the victim have any defensive wounds. Finally, counsel reasonably concluded that Petitioner was not credible and would be a terrible witness, which made self-defense a less viable defense. In light of those facts, it was not unreasonable for counsel to argue that the other person present at the scene, Petitioner's wife, had killed the victim.

Petitioner relies on the case of *Phillips v. Woodford*, 267 F.3d 966 (9th Cir. 2001), in which the Ninth Circuit found that Phillips had put forth a colorable claim that his counsel's performance was deficient. *Phillips* is distinguishable for several reasons. In *Phillips*, the

court looked only at the defendant's allegations to assess whether there was a colorable claim. Here, the Court is assessing not the allegations but whether Petitioner satisfied the *Strickland* standard based on the evidence presented. More importantly, in *Phillips*, counsel was alleged not to have investigated the facts of the case beyond asking his client what happened, including not reviewing relevant evidence in his possession. *Id.* at 976, 977. The evidence is undisputed in this case that Cooper thoroughly investigated the case by examining the physical evidence, hiring experts and interviewing all of the State's witnesses. Further, counsel in *Phillips* averred that he thought his client's alibi defense was meritless from the beginning but he relied upon that false information in failing to investigate another defense. *Id.* at 978. Petitioner's counsel thoroughly investigated the facts of the case and selected what he thought was the best defense in light of all the information he possessed.

Finally, Petitioner contends that counsel precluded him from testifying because of the defense he chose. The thrust of this argument is primarily a restatement of Petitioner's objection to the defense counsel presented. To the extent it is an independent subclaim it has no merit. Although counsel chose not to present self-defense, as Petitioner desired, he did not foreclose Petitioner from testifying. Counsel stated at the evidentiary hearing that if Petitioner had insisted on testifying, he would have made a record of his objection and allowed him to testify.

As counsel testified, this was a difficult case and he chose the best of two bad options for a defense. The state court's conclusion that his decisions were within prevailing professional norms was not unreasonable under *Strickland*.

### c.    Claim 2(a)

Petitioner alleges his trial counsel was ineffective for failing to object to his coerced confession. Specifically, he argues that his confession was coerced by the playing of a recording of his daughter's interview and by threatening him with the loss of his child.

The PCR court interpreted this claim as alleging appellate IAC for failing to raise a claim objecting to the admission of his coerced confession. Therefore, although this claim was fairly presented, there is no merits ruling on the trial IAC claim and the Court evaluates

it *de novo. Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002). However, there are relevant state court factual determinations, which this Court must presume correct. 28 U.S.C. § 2254(e)(1).

To ensure the voluntariness of a statement, the court must consider the effect that the totality of the circumstances had upon the will of the defendant. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 226-27 (1973). "The question is 'whether the defendant's will was overborne at the time he confessed.'" *Clark v. Murphy*, 331 F.3d 1062, 1072 (9th Cir. 2003) (quoting *Haynes v. Washington,* 373 U.S. 503, 513-14 (1963)). Absent police misconduct causally related to the confession, there is no basis for concluding that a confession was involuntary. *Colorado v. Connelly,* 479 U.S. 157, 167 (1986) ("coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment").

Utilizing the totality of the circumstances test, both the characteristics of the accused and the details of the interrogation are considered. *See Dickerson v. United States*, 530 U.S. 428, 434 (2000); *see also Haynes*, 373 U.S. at 513-14. Factors related to the accused include youth, lack of education, low intelligence, and lack of advice regarding constitutional rights. *See Schneckloth*, 412 U.S. at 426. Factors related to the interrogation include length of detention, the location of the interrogation, the repeated or prolonged nature of the questioning, and the use of physical punishment, including deprivation of food or sleep. *Id.*; *see also Withrow v. Williams*, 507 U.S. 680, 693-94 (1993). While a confession obtained by physical violence is per se involuntary, a confession obtained by psychological coercion is not. *United States v. Miller,* 984 F.2d 1028, 1030 (9th Cir. 1993) (citing *Haynes*, 373 U.S. at 515).

The question of whether a suspect's inculpatory statements were voluntary is typically a mixed question of law and fact. *See Miller v. Fenton*, 474 U.S. 104, 111-12 (1985). This Court must defer to the underlying factual determinations. *Lambert v. Blodgett*, 393 F.3d 943, 977-78 (9th Cir. 2004). The PCR court made the following factual findings:

[D]etectives confronted Petitioner with statements by his wife and daughter

- 15 -

> that contradicted Petitioner's statements to police. There was no physical abuse, promise or benefit or leniency, threats, or use of force . . . . The record does not support Petitioner's claim that police coerced his statement by threatening to charge his wife with murder or with the loss of his child.

(Doc. 34, Ex. I at 12.) Petitioner has not argued much less provided clear and convincing evidentiary support to overcome the PCR court's finding that he was not threatened with the loss of his child. *See Lambert*, 393 F.3d at 976 (state court's finding that the interviewing officer made no threats or promises in connection with the confession is "essentially a factual conclusion, which is entitled to deference") (quoting *Rupe v. Wood*, 93 F.3d 1434, 1444 (9th Cir. 1997)). Because this Court defers to that finding, that portion of Petitioner's claim fails.

The PCR court did not make a fact finding regarding Petitioner's other factual allegation of coercion – the playing of his child's interview. During his interrogation, Petitioner repeatedly asked what statements his wife was making. (Doc. 55 at 18-20.) The detectives told him that his wife and daughter were both providing consistent information that was in contradiction to what he was telling them. (*Id.* at 18.) Petitioner objects specifically to a portion of his interrogation in which it appears the detectives played a portion of a recording of his daughter being questioned:

> Q:   This, this detective here spoke to your daughter, what do you think about this?
>
> Q4:  Okay, everything you saw tonight and everything about that?
>
> A2:  And, uh, he then ran in our bed and _____. He just died.
>
> Q4:  He did? Do you know why?
>
> A2:  He cutted his neck off.
>
> Q4:  Oh.
>
> Q:   Your daughter saw more than you're telling me.

(*Id.* at 20.) On the next page of the transcript, Petitioner requested that the detectives play the recording again, which they did, and told them he wanted to know what his daughter had said. (*Id.* at 21-22.) One of the detectives told him that what his daughter said was irrelevant because the detectives knew what had happened and had already processed the scene. (*Id.* at 22.) Petitioner's expressed focus of concern was that his wife would get in trouble even

though she was not at fault. (*Id.* at 23.) He requested that the detectives turn off the tape recording so he could talk to them off the record and then he provided inculpatory information. (*Id.* at 23-24.)

The playing of two sentences by Petitioner's daughter does not support Petitioner's claim that his will was overborne by the detectives. As found by the trial court, there was no use of physical force, threats or promises made during the interrogation. Further, the state courts found that Petitioner was properly advised of his *Miranda* rights. (Doc. 34, Ex. C at 4-5.) Petitioner repeatedly sought information from the detectives about what his family members were saying and asked to hear his daughter's recording for a second time. That was not coercive. After review of the record, the state court factual findings, and the totality of the circumstances, this Court finds that Petitioner's statements were not involuntary.

### d. Claim 3(a)

Petitioner alleges counsel was ineffective for failing to argue on appeal that Detective Montano's interrogation of Petitioner should have been excluded as hearsay, improper vouching and violative of the Confrontation Clause.

The disputed statement admitted at trial is one by Detective Montano during his interrogation of Petitioner:

> Q:   . . . Is, is what you're telling me right now is what happened?
>
> A:   Well, let's do this, let's go, I wanna find out what's going on with Chris and then we'll finish up this conversation.
>
> Q:   Well, Chris is, is, is talking, like I said, uh, they're telling me that, uh, Chris is, is saying, answering all the questions. She's coming across truthfully, um, you know, she's basically talking. She's talking to Detective Amado. She's talked to Detective Amado. Uh, we've talked to your daughter, um, what your daughter says, is it matches what your, what Chris is saying, and Chris is matching what, uh, uh, Christy is saying and basically, um, it doesn't match you, that's why I'm asking you, is what you're saying . . .

(Doc. 56 at 75.) The trial court ruled that it was not hearsay because there was no substance to the statement, just a reference comparing conversations; the judge equated it to an investigative technique. (Doc. 34, RT 11/29/01 at 102-03.) The court went on to note the context of the statements was that the officer was answering questions by the defendant

- 17 -

regarding what his wife had said. (*Id.* at 103-04.)

The PCR court provided the following background and analysis of this claim:

> Trial counsel objected on hearsay grounds. The prosecutor responded that the police used the statements only as a tactic to obtain Petitioner's statement. The trial court ruled that references to Petitioner's wife's and daughter's statements were not hearsay. The trial court explained that its ruling took into account the context of the officer's conversation with Petitioner in that Petitioner continued to ask the officer for his wife's specific statements. . . .
>
> In its response, the State argues that specific statements by Petitioner's daughter were not presented to the jury in any form. The court has reviewed the audiotape which was played for the jury (State's Exhibit 32B) and admitted into evidence. The audiotape contains the reference by detectives to the wife's statement that "you guys shouldn't have done it" but contains none of the specific statements by Petitioner's daughter as set out in section 4.D above. Thus, the record does not support Petitioner's claims with respect to his daughter.
>
> Petitioner's wife's statement that "you guys shouldn't have done it" was not offered for the truth of the matter and is so vague that is of minimal value. The detective's purpose in informing Petitioner of his wife's statement was to inform him that her statement was consistent with his daughter's statement but inconsistent with Petitioner's version of events the night of the murder. By confronting Petitioner with this information, the detective[s] were attempting to elicit additional statements from Petitioner. Given that the physical evidence also contradicted Petitioner's early statements, that tactic was reasonable.
>
> Finally, trial counsel did not request a curative instruction or move for a mistrial. On the facts of this case, there was no reason for the trial court to give a curative instruction or grant a mistrial. Appellate counsel is not required to raise a non-meritorious issue and Petitioner suffered no prejudice by appellate counsel's decision.

(Doc. 34, Ex. I at 13.)

Petitioner had a right under the Confrontation Clause of the Sixth Amendment and the Due Process Clause to cross-examine the witnesses against him. *Davis v. Alaska*, 415 U.S. 308, 315 (1974); *Pointer v. Texas*, 380 U.S. 400, 403-04 (1965). The Confrontation Clause precludes admission of testimonial out-of-court statements if the party against whom they are offered has not had an opportunity to confront that witness. *Crawford v. Washington*, 541 U.S. 36, 69 (2004). However, statements that are not hearsay or are non-testimonial do not implicate the Confrontation Clause. *Id.* at 59 n.9, 68 (citing *Tennessee v. Street*, 471 U.S. 409, 414 (1985)).

Under Arizona Rule of Evidence 801(c), hearsay is "a statement, other than one made

by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." In the portion of transcript to which Petitioner objects, Detective Montano did not recount any statements made by Petitioner's wife or daughter. As noted by the trial court, in response to a question posed by Petitioner, the detective told him that his wife was talking and that her story did not match his but was consistent with what his daughter had stated. There was no actual statement by his wife or daughter offered. The detective's statement was not offered for its truth, as the state court concluded, it was merely an investigative technique and the interrogation was offered for Petitioner's statements not the detective's. Because the statement was not hearsay, the Confrontation Clause was not implicated.

Because there is no merit to the underlying claim, Petitioner cannot establish that he was prejudiced by his appellate counsel's failure to raise the claim. The PCR court's decision – that appellate counsel was not ineffective for failing to raise a claim challenging the admission of Detective Montano's interrogation – was not an unreasonable application of *Strickland* to the facts.

### e.    Claim 3(b)

Petitioner alleges appellate counsel was ineffective for failing to raise a claim challenging the trial court's refusal to accept a manslaughter verdict. Petitioner contends that when the jury informed the court that it was unanimous on second degree murder and manslaughter, deliberations should have ceased and the court should have accepted the lesser verdict.

In denying this claim on the merits, the PCR court set forth the relevant background:

during deliberation, the jury submitted questions which dealt with unanimity requirements and lesser-included offenses. The jury indicated that all members were unanimous as to guilt on second degree murder and manslaughter, but that they were split 8/4 on first degree (8 not guilty; 4 guilty). Two of the four apparently questioned whether they were compelled to vote for second degree when they believed it was first degree. . . .

The court referred the jurors to instructions on the lesser-included offenses of second degree murder and manslaughter, both lesser offenses which could be considered after making reasonable efforts but failing to reach a verdict on the greater offense. After further deliberations, the jury returned

a verdict of guilty on second degree murder, a lesser-included offense.

> This record does not support Petitioner's claim that the trial court rejected the jury's unanimous manslaughter verdict. The jury's revelation of its division and standing on the lesser-included offenses was not a formal verdict. The questions were not written or signed by all jurors or by the foreperson, whose signature is required on the verdict. Therefore, even if appellate counsel had raised this non-meritorious issue, it would not have changed the outcome of the appeal.

(Doc. 34, Ex. I at 7-8.)

As pointed out by the PCR court, the jury question did not satisfy the requirements for a jury verdict because it was not signed by the foreman nor returned in open court. Ariz. R. Crim. P. 23.1(a). Further, even if the jurors had rendered a verdict at that time, Petitioner's argument is flawed. He relies on the premise that the court was obligated to accept the lesser of the two alleged verdicts, because one was improper or there was doubt as to which of the two he was found guilty. At the time of the jury question, the jury clearly indicated unanimous findings on both second degree murder and manslaughter, therefore, there was no doubt regarding the finding and the court would not have been obligated to accept the lesser of the two offenses.

Because there is no merit to the underlying claim, Petitioner cannot establish that he was prejudiced by his appellate counsel's failure to raise the claim. The PCR court's decision – that Petitioner's appellate counsel was not ineffective for failing to raise a claim challenging the trial court's refusal to accept a manslaughter verdict – was not an unreasonable application of *Strickland* to the facts.

### f.    Claim 3(d)

Petitioner alleges his appellate counsel was ineffective for failing to raise a claim based on *Apprendi-Blakely* that he had a right to a jury trial on aggravating factors.

At sentencing the judge imposed an aggravated term based on Petitioner's 1993 Arizona felony conviction, and his long history of involvement in the criminal justice system. (Doc. 34, Ex. A at 33-34.) The PCR court agreed that the *Blakely* decision applied to Petitioner because it was issued while Petitioner's direct appeal was pending. (*Id.*, Ex. I at 7.) However, the trial court aggravated Petitioner's sentence based on his criminal history

and prior convictions, which are exempt from *Blakely's* requirement of a jury finding. (*Id.*) Because Petitioner was not prejudiced by appellate counsel omitting this non-meritorious issue from the appellate brief, the PCR court rejected this claim. (*Id.*)

"Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Blakely v. Washington*, 542 U.S. 296, 301 (2004) (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)). "The 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*." *Id.* at 303 (citations omitted). Prior convictions are excepted because they are entered during a proceeding with its own procedural safeguards. *Apprendi*, 530 U.S. at 488. In assessing how *Blakely* applied to the Arizona sentencing scheme, the state supreme court held:

> Under A.R.S. § 13-702, the existence of a single aggravating factor exposes a defendant to an aggravated sentence. Therefore, once a jury finds or a defendant admits a single aggravating factor, the Sixth Amendment permits the sentencing judge to find and consider additional factors relevant to the imposition of a sentence up to the maximum prescribed in that statute.

*State v. Martinez*, 210 Ariz. 578, 585, 115 P.3d 618, 625 (2005).

Because the sentencing judge relied upon Petitioner's prior conviction as an aggravating factor, which did not have to be found by a jury, he could consider other factors in aggravation and impose an aggravated sentence. Petitioner argues that the PCR court erred in relying on *Blakely* rather than *Apprendi*. Because they were both decided before his appeal was final, they both apply. More importantly, their decision regarding prior convictions as a basis for an aggravated sentence is identical. Petitioner also argues that he did not admit his criminal history. Admission of a fact by the defendant is a separate *Apprendi*-exemption, but it is irrelevant in this case because the aggravated sentence was based on a prior conviction. Finally, Petitioner disagrees with the Supreme Court's decision exempting prior convictions from a jury finding. Habeas relief can only be premised upon clearly established Supreme Court law, therefore, his argument for a change in the law is fruitless.

Because there is no merit to the underlying claim, Petitioner cannot establish that he

was prejudiced by his appellate counsel's failure to raise the claim. The PCR court's decision – that Petitioner's appellate counsel was not ineffective for failing to raise a claim based on *Apprendi-Blakely* – was not an unreasonable application of *Strickland* to the facts.

### g. Claim 4

Petitioner argues his sentencing was defective because the court allowed him to represent himself without making *Faretta* findings. Petitioner argues that because his counsel informed the court that he did not believe Petitioner should represent himself, the Court was required to hold a hearing and make a record of his competency to represent himself.

Following his conviction, Petitioner filed a motion to terminate his counsel and allow him to represent himself. (Doc. 34, Ex. A at 17.) The trial court held a hearing and granted Petitioner's request:

> Defendant states that he wishes to represent himself at sentencing . . . .
>
> Mr. Cooper states that, although he wishes to withdraw, he does not believe the defendant should represent himself.
>
> The Court questions the defendant as to his understanding of his right to counsel, the sentence range in his case, and the possible consequences of his proceeding to sentencing without counsel.
>
> Defendant again states that he wishes to waive his right to counsel.
>
> FILED IN COURT: Waiver of Right to Lawyer.
>
> THE COURT FINDS that the defendant has knowingly, intelligently and voluntarily waived his right to counsel from this point forward, up to and including sentencing in this case. This does not preclude defendant from retaining counsel at any time.
>
> . . . .
>
> Defendant is advised that he is still eligible to have counsel appointed by the Court . . . .

(*Id.* at 26.)

The appellate court denied this claim:

> [T]he trial court informed James of the seriousness of his decision to represent himself and the possible consequences of that decision and that James validly waived his right to counsel. The trial court was in the best position to assess James's competency. On this record, we have no basis to reverse its decision to allow James to represent himself during sentencing.

(Doc. 34, Ex. C at 7.)

A defendant has a constitutional right to represent himself, however, because that choice involves relinquishing the right to counsel and related benefits, he must knowingly and intelligently waive those rights. *Faretta v. California*, 422 U.S. 806, 819-20, 835 (1975). Such a waiver requires that the defendant is aware of the pitfalls of self-representation and knowingly assesses his right to defend himself. *Id.* at 835-36.

The trial judge documented that he informed Petitioner of the dangers of self-representation and the sentence he was facing, as well as questioning him regarding his right to counsel. Petitioner does not question that he possessed the necessary information to make a knowing waiver. He contends only that his competency was in question in light of his counsel's opinion that he should not represent himself. The trial judge possessed that information, along with his observations of Petitioner throughout the pre-trial and trial period. Counsel did not opine that Petitioner was incompetent. Although the record does not reveal the basis for his opinion, it is clear from other parts of the record that counsel and Petitioner did not agree on trial strategy. Thus, he could have believed that Petitioner would be better served with a counsel's strategy for sentencing. *See, e.g. Faretta*, 422 U.S. at 834 ("It is undeniable that in most criminal prosecutions defendants could better defend with counsel's guidance than by their own unskilled efforts."). Regardless, the appellate court's decision – that Petitioner's waiver was knowing and intelligent – was not an unreasonable application of clearly established Federal law.

### h.    Claim 5

Petitioner alleges the cumulative prejudicial effect of the errors alleged in his other claims warrants reversal of his conviction. Respondents did not discuss the exhaustion of this claim but the Court notes that Petitioner did not raise a cumulative error claim in state court. Because he would be precluded from raising such a claim now, it is technically exhausted and procedurally defaulted.

Regardless, because the Court has not found merit to any of Petitioner's allegations of error, there is no prejudicial cumulative effect to analyze and Claim 5 fails on the merits.

## III.  Conclusion

Claims 1(b)-1(d), 2(b), 3(c), and 3(e) are procedurally defaulted. Claims 1(a), 2(a), 3(a), 3(b), 3(d), 4 and 5 fail on the merits.

Rule 11(a) of the Rules Governing Section 2254 Cases, requires that in habeas cases the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Such certificates are required in cases concerning detentions arising "out of process issued by a State court," or in a proceeding under 28 U.S.C. § 2255 attacking a federal criminal judgment or sentence. 28 U.S.C. § 2253(c)(1).

Here, the Petition is brought pursuant to 28 U.S.C. § 2254, and challenges detention pursuant to a state court judgment. This Court must determine, therefore, if a certificate shall issue. The Court declines to issue a certificate of appealability because Petitioner has not "made a substantial showing of the denial of a constitutional right," as required under 28 U.S.C. § 2253(c)(2).

Accordingly,

**IT IS ORDERED**:

(1) Petitioner's Petition for Writ of Habeas Corpus by a Person in State Custody Pursuant to 28 U.S.C. § 2254 is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.  The Clerk of Court is directed to enter judgment accordingly and close this case.

(2) Petitioner is **DENIED** a certificate of appealability in this case.

DATED this 27th day of September, 2011.

_____
A. Wallace Tashima
United States Circuit Judge
Sitting by Designation

- 24 -